# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 1691 | DATE | 2/20/2001 |
| CASE TITLE | | Delllinger vs. Haws | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

| | | |
|---|---|---|
| (1) | ☐ | Filed motion of [ use listing in "Motion" box above.] |
| (2) | ☐ | Brief in support of motion due _____. |
| (3) | ☐ | Answer brief to motion due_____. Reply to answer brief due_____. |
| (4) | ☐ | Ruling/Hearing on _____ set for _____ at _____. |
| (5) | ☐ | Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (6) | ☐ | Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (7) | ☐ | Trial[set for/re-set for] on _____ at _____. |
| (8) | ☐ | [Bench/Jury trial] [Hearing] held/continued to _____ at _____. |
| (9) | ☐ | This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2). |
| (10) | ■ | [Other docket entry]  Enter Memorandum Opinion and Order. For the reasons stated in the attached order, the Court denies Martize Dellinger's petition for writ of habeas corpus. Judgment is entered in favor of respondent, J. Ronald Haws. |
| (11) | ■ | [For further detail see order attached to the original minute order.] |

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | FEB 20 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **MARTIZE DELLINGER,** | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 99 C 1691 |
| | ) |
| **J. RONALD HAWS,** | ) |
| Respondent. | ) |

DOCKETED FEB 20 2001

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In October 1996, after a bench trial in the Circuit Court of Cook County, Martize Dellinger and two other men were convicted of two counts of attempted murder and two counts of armed violence, as well as two counts of aggravated battery with a firearm and two counts of aggravated battery. The convictions arose from a shooting that took place in August 1995 that resulted in injuries to two women. Dellinger was given concurrent sentences of 19 years on the attempted murder and armed violence charges; the other convictions merged in the judgment. On appeal, the Illinois Appellate Court affirmed the conviction but concluded that the trial court was required by law to impose consecutive sentences; it vacated Dellinger's sentence and remanded for resentencing. On remand, the trial judge imposed consecutive 15 year sentences, for a total of 30 years.

Dellinger has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. He challenges the sufficiency of the evidence on the attempted murder charges and the imposition of consecutive sentences, and he contends that his counsel were ineffective in failing to challenge

the imposition of consecutive sentences.

## Facts

Dellinger was tried together with Rhamal Powell and Kareem Muhammad. Only two witnesses testified at trial. Patricia Baker testified that about 2:30 a.m. on August 25, 1995, she was sitting on her back porch at 13141 South Langley with several friends. Three men approached; when they were about 10 to 12 feet away from Baker, they pulled out guns, and one said, "Don't a motherfucker move." Baker and her friends started to run, and the men started shooting. Baker said there was a light on the porch (though photos introduced by the prosecution evidently did not show a light). She identified the three men as Dellinger, Powell, and Muhammad. Baker testified that she was shot in the buttocks; she was taken to the hospital, treated, and released around 6:00 a.m. She also testified that later that morning, she viewed a book of photographs at a police station and identified Muhammad and Dellinger. She later viewed three lineups and identified Muhammad, Powell, and Dellinger as the shooters.

Cherie Morris testified that she was one of the people sitting on the porch with Baker. She gave a similar account to that given by Baker. She said that as she was running, she heard shots, "too many to count." She identified Dellinger, Muhammad, and Powell as the shooters. Morris testified that she was shot in the foot; she was taken to the hospital, treated, and released around 6:00 a.m. She picked Muhammad's photo out of a book and identified all three defendants in lineups.

The prosecution also introduced, by stipulation, statements by Powell and Dellinger; each statement was offered only against the defendant who had given the particular statement. In Dellinger's statement, he stated that he was 17 years old (born on December 1, 1977) and was a

2

member of the Vice Lords street gang. Dellinger stated that his car had been shot at by a rival gang and that on August 25, 1995, he and the other defendants went looking for members of the rival gang. When they saw the people on the porch, he and the other two defendants approached them, the other defendants started shooting, and the people ran. Dellinger said that "he didn't want to shoot but he raised his gun and shot two times towards where the two guys [from the porch] had ran."

The defense did not call any witnesses. In closing, counsel for each of the defendants argued that the evidence was insufficient to prove an intent to kill as required for attempted murder and that it was insufficient to prove that the defendants had caused great bodily harm, a necessary element of the aggravated battery and armed violence charges. See 720 ILCS 5/12-4(a) & 33A-2.[1] The trial judge found each of the defendants guilty. As indicated earlier, the judge imposed concurrent sentences of 19 years on the attempted murder and armed violence counts.

On appeal, Dellinger's appointed counsel argued that the evidence was insufficient to convict him and that the convictions for armed violence and aggravated battery arose from the same act as the attempted murder and should be vacated under state law as violative of the "one act-one crime" rule. The Appellate Court rejected these contentions. With regard to the sufficiency of the evidence, the court held that the act of firing a gun at a person was sufficient to support a finding of intent to kill and that under Illinois law, a gunshot wound causing damage to

---

[1] Because armed violence is defined as the commission of a felony while armed with a dangerous weapon, see 720 ILCS 5/33A-2, it incorporates the elements of the predicate felony, in this case aggravated battery.

3

a person's body qualified as "great bodily harm" sufficient to support the aggravated battery convictions. After rejecting Dellinger's "one act-one crime" challenge, the court noted that the prosecution had argued that the sentences should have been consecutive pursuant to 730 ILCS 5/5-8-4(a), which requires consecutive sentencing if one of the offenses is a Class X or Class 1 felony and the defendant inflicted serious bodily injury, even if the multiple convictions arose from a single course of conduct and a single criminal objective. The court agreed, held the sentence void, and remanded for imposition of consecutive sentences.

Dellinger says the court's decision to vacate the sentences was made *sua sponte,* but that is far from clear. Though the parties have not provided this Court with the briefs on appeal, the Appellate Court stated in its decision that "the State argues that under section 5-8-4(a) ..., the trial court should have imposed consecutive rather than concurrent sentences." *People v. Dellinger,* No. 1-96-3640, slip op. at 7 (Ill. App. Sept. 30, 1997). This suggests that the prosecution had in fact raised the point in its appeal brief.

One way or another, however, Dellinger took no steps to challenge the Appellate Court's directive to impose consecutive sentences. On October 2, 1997, an assistant public defender wrote Dellinger to advise him of the Appellate Court's September 30, 1997 ruling, specifically calling to Dellinger's attention that the court had directed the imposition of consecutive sentences. He advised Dellinger that he could file a petition for leave to appeal ("PLA") to the Illinois Supreme Court and told him that he had 21 days from the Appellate Court decision to do so, though he stated that "the Supreme Court is lenient with *pro se* petitions and ordinarily has no problem accepting petitions mailed within 35 days of the date the Appellate Court filed its decision in the case." Dellinger appears to have sought leave to appeal in February 1998 and

4

again in November 1998 (raising the same issues that his appointed counsel had raised in the direct appeal, *not* including the imposition of consecutive sentencing), but his motions for leave to file a late PLA were denied both times.

In the meantime, Dellinger was returned to the Circuit Court of Cook County for resentencing. On January 21, 1998, the trial judge imposed two consecutive 15 year terms. Dellinger appealed, challenging not the consecutive sentencing but rather only whether a statute which reduced the amount of good conduct credit to which prisoners are entitled comported with the Illinois Constitution. In January 1999, in an unrelated case, the Illinois Supreme Court declared that statute unconstitutional, and in February 1999, the Appellate Court applied this ruling in Dellinger's case, holding that he would be eligible for one day of good conduct credit for each day served.[2]

In or about late May 1998, while his appeal from the sentence was pending, Dellinger filed a *pro se* petition for post-conviction relief. In the petition (including an amended version filed in mid June 1998), Dellinger raised the following issues: 1) the evidence was insufficient to prove that he had the intent to kill; 2) his convictions for attempted murder and armed violence violated the "one-act-one-crime" rule; 3) the Illinois legislature's enactment of a statute reducing good conduct credits violated the Illinois Constitution; and 4) his sentence was excessive. The parties have not provided the Court with copies of the trial court's ruling (though respondent says the trial court dismissed the petition), or of the ruling on appeal if there was an appeal.

---

[2] Respondent's answer misidentified this decision as having been made in the appeal from the dismissal of Dellinger's state post-conviction petition. It is clear from the text of the Appellate Court's ruling, however, that it was made in the direct appeal that Dellinger filed after resentencing, not in an appeal from the denial of his post-conviction petition.

5

## Discussion

Under 28 U.S.C. § 2254, a prisoner is entitled to a writ of habeas corpus if he is being held under a state court judgment obtained in violation of the Constitution. A federal court may not issue a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court proceedings unless that state decision (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Id.* § 2254(d)(1) & (2); *Alvarez v. Boyd,* 225 F.3d 820, 824 (7th Cir. 2000). A state court decision is contrary to clearly established law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1523 (2000). A state court decision is an unreasonable application of clearly established law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

1.  **Sufficiency of evidence**

Dellinger argues that the evidence was insufficient to prove his guilt of attempted murder. In evaluating the sufficiency of the evidence, a reviewing court is required to view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318-19 (1979). In affirming Dellinger's conviction, the Appellate Court used exactly this standard. *People v. Dellinger,* slip op. at 4. Under §2254(d)(1), this Court must

6

determine whether the Appellate Court properly applied the *Jackson* standard to the facts of this case. *Gomez v. Acevedo,* 106 F.3d 192, 199 (7th Cir.1997) (federal review "turns on whether the state court provided fair process and engaged in reasoned, good-faith decision making when applying *Jackson's* 'no rational trier of fact' test").

The Court concludes that the Appellate Court engaged in reasoned decision making and properly applied the "no rational trier of fact" test in evaluating the sufficiency of the evidence of attempted murder. Under Illinois law, attempted murder requires proof that the defendant, with intent to kill, committed an act which constituted a substantial step toward the commission of murder. *E.g., People v. Burrage,* 269 Ill. App. 3d 67, 76, 645 N.E.2d 455, 462 (1994). Intent to kill can rarely be proved directly; Illinois permits the fact finder to infer the defendant's intent from his acts and the surrounding circumstances, including the character of the assault, the use of a deadly weapon, and other relevant circumstances. *See, e.g., People v. Buford,* 235 Ill. App. 3d 393, 410, 601 N.E.2d 1099, 1108 (1992); *People v. Agee,* 205 Ill. App. 3d 146, 151, 562 N.E.2d 545, 548 (1990). The Illinois courts have consistently held that "the very act of firing a gun at a person supports the conclusion that the shooter manifested an intent to kill." *Buford,* 235 Ill. App. 3d at 410-11, 601 N.E.2d at 1108-09; *People v. Lopez,* 245 Ill. App. 3d 41, 47, 614 N.E.2d 329, 334 (1993), *aff'd,* 166 Ill. 2d 441, 655 N.E.2d 864 (1995).

In this case, the evidence showed that Dellinger, together with two other armed men, shot repeatedly at several people from close range. These facts were more than sufficient to prove Dellinger guilty of attempted murder. *See Agee,* 205 Ill. App. 3d at 151, 562 N.E.2d at 548 (defendant who shot five times toward four people from 15-20 feet away was proven to have had intent to kill). The fact that the victims may not have suffered permanent or life-threatening

injuries does not undermine or diminish Dellinger's guilt.

The Illinois courts correctly applied the law in evaluating the sufficiency of the evidence against Dellinger, and their decisions were reasonable in light of the evidence presented. *See* 28 U.S.C. §2254(d)(1) & (2). For these reasons, the Court denies Dellinger's first claim.

2.  **Imposition of consecutive sentences**

Dellinger appears to attack the Appellate Court's imposition of consecutive sentences, challenging its application of the Illinois statute governing such sentences, 730 ILCS 5/5-8-4(a). This claim is not cognizable in a federal habeas corpus proceeding; we may address only claimed violations of the federal constitution, not violations of state law. *See, e.g., Kurzawa v. Jordan,* 136 F.3d 435, 440 (7th Cir. 1998). Dellinger has cited no cases to support a claim that a state court's application of state consecutive sentencing standards violates the federal constitution in the circumstances of this case.

3.  **Ineffective assistance of counsel**

Dellinger argues that he received ineffective assistance of both appellate and trial counsel because neither his appointed appellate counsel nor his appointed counsel on remand challenged the decision to impose consecutive sentences. Actually, because Dellinger has not provided the Court with the transcript of the sentencing proceedings on remand, the Court cannot say for certain that his attorney failed to raise the issue at that point. Even if he did not, however, Dellinger's argument suffers from two basic flaws. First, Dellinger concedes that he never raised the issue of ineffective assistance of counsel in state court at any time, either in a petition for leave to appeal to the Illinois Supreme Court after the Appellate Court's decision, on remand, on the appeal following the remand, or in his post-conviction petition. "A [habeas corpus] petitioner

8

must provide the state courts with a fair opportunity to apply constitutional principles and correct any constitutional error committed by the [state] court." *Bocian v. Godinez,* 101 F.3d 465, 469 (7th Cir.1996). When a habeas corpus petitioner fails to raise claims in the state courts that he could have asserted there, his claims are considered to be procedurally defaulted. *E.g., Lemons v. Sullivan,* 54 F.3d 357, 360 (7th Cir. 1995). If a claim has been procedurally defaulted, a federal court cannot reach the merits of that claim unless the petitioner demonstrates cause for the default and actual prejudice from his failure to raise the claim, or that enforcing the default would lead to a "fundamental miscarriage of justice." The "miscarriage of justice" exception is not at issue here. To demonstrate "cause," Dellinger must, under ordinary circumstances, show that there was some external impediment that prevented him from raising the claim. *Murray v. Carrier,* 477 U.S. 478, 488 (1986).

Dellinger has not established cause for his failure to raise his claim of ineffective assistance in his post-conviction petition. His only argument is that he was young – just over 20 years old at the time he filed the post-conviction petition – and did not realize that his lawyer had made an error. Without more, this is insufficient. The Seventh Circuit has held that a habeas corpus petitioner's illiteracy, or his limited education, are by themselves insufficient to establish cause. *Henderson v. Cohn,* 919 F.2d 1270, 1272-73 (7th Cir. 1990) (petitioner's illiteracy; also citing with approval *United States ex rel. Stewart v. Ragen,* 231 F.2d 312, 314 (7th Cir. 1956) (petitioner's limited education and lack of understanding of legal procedures). By analogy, Dellinger's age – he was, after all, an adult in the eyes of the law – is likewise insufficient. In any event, Dellinger provides no evidentiary support for the proposition that he was incapable of understanding what was occurring or what his legal rights were.

9

In addition, Dellinger's claim fails on the merits. *Strickland v. Washington*, 466 U.S. 668 (1984), requires Dellinger to show this attorneys' representation "fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. We need not address the first part of the test, for Dellinger's claim founders on the second part. First, Dellinger has not shown that a challenge to the Appellate Court's supposedly improper "fact finding" in requiring consecutive sentences would have succeeded. In *People v. Arna*, 263 Ill. App. 3d 578, 635 N.E.2d 815 (1994), the trial court had made no finding one way or the other concerning whether the defendant had inflicted "severe bodily injury," but the appellate court reviewed the record on its own, concluded that it was "clear" that severe bodily injury had occurred, and remanded for imposition of consecutive sentences. *Id.* at 589, 635 N.E.2d at 822-23. The Illinois Supreme Court affirmed, rejecting the defendant's challenge that the Appellate Court lacked the authority to impose consecutive sentences *sua sponte*. *People v. Arna*, 168 Ill. 2d 107, 112, 658 N.E.2d 445, 448 (1995). Dellinger has provided no reason to believe that the Illinois Supreme Court would have done anything different in this case had his counsel challenged the Appellate Court's decision.

Second, even if Dellinger's appellate attorney had been able to persuade the Appellate Court or the Illinois Supreme Court not to *require* imposition of consecutive sentences, Dellinger does not and cannot argue that those courts lacked the authority to vacate the original concurrent sentences and remand for resentencing or that they would have declined to do so upon finding that the trial court had erred. And Dellinger has failed to establish that if faced with the decision on remand whether consecutive sentences were required by section 5-8-4(a), the trial judge

10

would have concluded that they were not. Dellinger's challenge to the imposition of consecutive sentences boils down to the question whether either of the shooting victims' gun shot wounds constituted "severe bodily injury" within the meaning of section 5-8-4(a). An injury need not be permanent to be considered "severe" under the statute. *E.g., People v. Bell,* 217 Ill. App. 3d 985, 1011, 577 N.E.2d 1228, 1247 (1991). Though it is true that small cuts that require no medical attention are not "severe" even if caused by a gunshot wound, *see People v. Durham,* 303 Ill. App. 3d 763, 708 N.E.2d 1249, 1254 (1999), gunshot wounds that pierce the body, as both did in this case, qualify under the statute. *See People v. Johnson,* 149 Ill. 2d 118, 159, 594 N.E.2d 253, 273 (1992) (gunshot wound to shoulder that required hospitalization for short period). *Cf. People v. Israel,* 181 Ill. App. 3d 851, 860, 537 N.E.2d 1124, 1130 (1989) (5 centimeter (2 inch) vaginal laceration to child was "severe bodily injury" under section 5-8-4(a)).

In sum, Dellinger's ineffective assistance claim was procedurally defaulted, and even if considered on its merits, it would fail.

## Conclusion

For the reasons stated above, the Court denies Martize Dellinger's petition for writ of habeas corpus. The Clerk is directed to enter judgment in favor of respondent.

MATTHEW F. KENNELLY
United States District Judge

Date: February 20, 2001

11